ISABELLE HAMMOND v. SCHUERMANN BUILDING & REALTY COMPANY, a Corporation, NORMAN SCHUERMANN, LEE SCHUERMANN, and HARRY SCHUERMANN, Appellants.—No. 38567.—177 S. W. (2d) 618.

Division Two, February 7, 1944.

*A. E. L. Gardner* and *Wilton D. Chapman* for appellants.

*Paul Dillon* and *Philip Foley* for respondent.

BOHLING, C.—The issue for decision is whether the italicized portion (italics throughout are ours) of the following instruction constitutes error at law: "The court instructs the jury that *the written statement of Abbie Chestnut* read in evidence *must not be considered* by you *as evidence against* the Schuermann Building & Realty Company or against Norman, Lee and Harry Schuermann." The verdict of the jury was for the defendants, all named in the instruction. Plaintiff's motion for new trial was sustained.* Plaintiff's contention here is that the instruction was erroneous because it "was too broad and too all inclusive." Of different opinion at first, we, after consideration, conclude the fault is one of nondirection and not of misdirection, and plaintiff, having taken her chances with the

---

*The new trial was granted on ground XIII of plaintiff's motion. Said ground read: "XIII. The Court erred in giving and reading to the jury instruction No. 9, which instruction stated the law improperly, called particular attention to particular facts in the evidence, directly commented on the evidence, isolated one particular part of the evidence, and was against the law and the evidence, and which instruction was given and read to the jury over the objection and exception of the plaintiff."

jury without requesting the court to cover or submitting an instruction covering the matter omitted from the quoted instruction, may not complain upon being disappointed by the action of the jury in returning a verdict in favor of her adversaries.

Isabelle Hammond instituted an action for $10,000 damages against Schuermann Building & Realty Company, a corporation, Norman Schuermann, Lee Schuermann, Harry Schuermann, and Abbie Chestnut for the alleged wrongful death of her husband. Later, she dismissed as to Abbie Chestnut. It appears that some men engaged in an altercation or riot in St. Louis county and Upton Hammond, plaintiff's husband, was killed. Mr. Chestnut was taken into custody in connection with the homicide and gave a written narrative, ▆▆▆ signed by his mark, of the occurrence to the officers. After his testimony in chief for defendants and cross-examination, this narrative was offered in evidence by plaintiff in rebuttal for the stated reason that it contradicted his sworn testimony before the jury. Then, in due course, followed defendants' instruction, quoted supra, the verdict for defendants, the order granting a new trial and defendants' appeal.

Post-rem narratives of a litigant are admissible and competent evidence on the merits against such narrator when admissions against interest. Holt v. Williams, 210 Mo. App. 470, 478, 240 S. W. 864, 866[5]. But post-rem narratives of one conspirator are generally hearsay as to coconspirators not participating in such narratives and are inadmissible, and being inadmissible are incompetent and are not to be considered, on the merits against the nonparticipating coconspirators. State v. Hill, 273 Mo. 329, 339, 201 S. W. 58, 61[4] (stating, speaking to that portion of the instruction bearing on post-rem acts and declarations of one conspirator, "that *such* acts and *declarations are not admissible against the appellant after the consummation of the common enterprise*"); State v. Roberts, 201 Mo. 702, 729, 100 S. W. 484, 491; Millspaugh v. Missouri Pac. Ry., 138 Mo. App. 31, 33, 119 S. W. 993, 994 (in remanding a cause for failure to instruct that depositions taken without notice to one defendant should not be considered as evidence against it, said: "*It was proper* therefore *to admit the depositions and* then *advise the jury* that *they should not be considered against the Missouri Pacific Company*"); State v. Priesmeyer, 327 Mo. 335, 339(I), 37 S. W. 2d 425, 427[2, 3]; Hays v. United States, 231 Fed. 106, 109[3]; Heard v. United States, 255 Fed. 829, 835[6]; Troutman v. United States, 100 Fed. 2d 628, 634[20]; Galatas v. United States, 80 Fed. 2d 15, 23[11], certiorari denied, 297 U. S. 711, 56 S. Ct. 574, 80 L. Ed. 998; Pappas v. United States, 292 Fed. 982, 983[2]. The nonparticipating litigants are entitled to an instruction on the limited effect of their coparty's narrative. State v. Hill; Millspaugh v. Missouri Pac. Ry. Co.; Hays v. United States; Troutman v. United States; all supra. State v.

Irvin, 324 Mo. 217, 222(II), 22 S. W. 2d 772, 774[3], observed: "However, we feel impelled to say that the evidence relating to *the admissions of Clinton Irvin and W. O. Irvin should not have been considered as evidence against their codefendants and the trial court should have so instructed* the jury; . . . " where five members of a family were tried for larceny.

The rule generally applicable to evidence of limited effect was quoted by Hyde, C., in Ferril v. Kansas City L. Ins. Co., 345 Mo. 777, 791, 137 S. W. 2d 577, 585[8]: " 'The rule is recognized and established by many decisions of this court that where evidence is admissible for one purpose or one issue but would be improper for other purposes and upon other issues in the case, it should be received. The opponent then has a right to an instruction if he should request it limiting the extent to which and the purpose for which the jury may consider such evidence.' " Citing authority. Such is the effect of cases cited by plaintiff: City of St. Louis v. Worthington, 331 Mo. 182, 191[1-4], 52 S. W. 2d 1003, 1008[1-6]; Brule v. Mayflower Apts. Co. (Mo. App.), 113 S. W. 2d 1058, 1060[2]; Courter v. Chase & Son Merc. Co., 222 Mo. App. 43, 47, 299 S. W. 622, 624[4-7]; and Corbett v. Terminal Rd. Ass'n, 336 Mo. 972, 982, 85 S. W. 2d 97, 103[10] (with respect to a patient's narrative of his condition to his physician). We need not concern ourselves whether this rule with respect to the admissibility of evidence for a limited purpose is without exception in extreme instances. It involves risks in the administration of justice under our jury system. Its practically universal application finds justification in the assumption that juries of laymen follow the instructions of the court limiting the evidentiary value of such evidence and do not improperly extend its scope and consider it relevant in determining factual issues for which it is incompetent and its consideration prejudicial. The rule calls for both inclusion and exclusion; i. e., the purpose for which the evidence is competent and more important, the evidence being in, the purposes for which its consideration is incompetent and prejudicial. The prejudicial effect of evidence incompetent on a given issue intensifies with its apparent bearing on and the detrimental effect of the proof of said issue on the affected litigant. Such litigant's recourse is an instruction on the scope of the evidence and the jury comprehending the effect of and following the instruction in its deliberation.

The evidence within the instant instruction was offered by plaintiff in rebuttal ▮▮▮ for the sole purpose of impeaching the witness Chestnut. It was original and competent evidence on the fact that Chestnut made the assertions contained in the narrative but as to defendants was hearsay evidence. "But impeaching evidence is not evidence of the fact touching which the witness is sought to be impeached. It is only the admission of parties which is evidence of the facts admitted." Rombauer, J., in Short v. Bohle (1895), 64 Mo.

App. 242, 247. It is not received and should not be considered "as evidence against the" other litigant. State v. Swain, 68 Mo. 605, 615(IV); Kennard v. McCrory, 234 Mo. App. 626, 632, 136 S. W. 2d 710, 714[2, 3] citing cases; Fesler v. Hunter (Mo. App.), 35 S. W. 2d 641, 643[7]. Where the impeaching testimony was the only evidence on which to sustain a verdict for plaintiff, the court, in ordering the discharge of an accused, said: "In other words, the impeachment of Sappington left the case just where it was before impeachment,— without any evidence to show that defendant was the annoying and disturbing phone caller." State v. Fitch (Mo. App.), 162 S. W. 2d 327, 330[6]. Courter v. Chase & Son Merc. Co., 222 Mo. App. 43, 299 S. W. 622, cited by plaintiff, followed the general rule (1. c.s 47 and 624[4-7]) but also remanded the case because counsel's argument that impeaching evidence (in addition to the fact of the assertion) was substantive evidence on the merits, tending to establish the facts asserted, was prejudicially erroneous (1. c.s 50 and 625[9], respectively). Chestnut's narrative was hearsay and incompetent to establish against defendants any fact embodied within the assertions. If inadmissible and incompetent hearsay on the facts asserted, it is as though not admitted in evidence with respect to such facts and logically should not and legally could not be considered by the jury to establish or refute facts embodied in the assertions.

The recent case of State v. Davenport, 342 Mo. 996, 997[1], 119 S. W. 2d 291[1], was remanded where one of defendant's witnesses was impeached by prior inconsistent statements because the trial court refused an instruction reading: " 'The court instructs the jury that *the impeachment of any witness testifying in this cause shall not be considered and used in the guilt or innocence of the defendant,* but shall be considered by the jury only in affecting the truth and veracity of any such witness attempted to be impeached,' " TIPTON, J., stating "The jury should have been told explicitly, by a proper instruction, that *impeaching evidence could not be consdered* by them *as substantive evidence tending to show appellant guilty* of any crime." The next two cases are there cited as sustaining authority. State v. Warren, 326 Mo. 843, 849(I), 33 S. W. 2d 125, 127[2], in sustaining the propriety of an instruction that impeaching testimony must not be considered "as tending in any way to establish the truth of any element" of an accused's guilt, observed: ". . . . we think that, for the purpose intended, it could have been couched in language that would have been plainer to the jury", citing State v. Swain, 68 Mo. 605, 615(IV), which stated: ". . .. *the jury ought. to have been far more explicitly told than they were that such testimony* could only be received for the sole purpose of impeaching Curry's statement, and *could, under no circumstances, be received as evidence against the accused*"; and on the following page: "The jury should have been very pointedly told that the testimony of Archer, so far as being

evidence against defendants, was to be entirely excluded from their consideration; that its only purpose was to impeach the statement of Curry, and could have no other effect whatsoever.'' See also Andrew v. Linebaugh, 260 Mo. 623, 654(VI), 169 S. W. 135, 143(VI); Bondurant v. State, 125 Ala. 31, 27 So. 775[3]; Hunter v. State, 59 Tex. Cr. R. 439, 129 S. W. 125, 134[14].

Of plaintiff's cited cases not hereinbefore mentioned: The instant instruction differs from instructions singling out a plaintiff and informing the jury that statements by him against interest may be taken or are presumed to be true because against interest et cetera; that is, singling out the plaintiff for the purpose of commenting on plaintiff's credibility and the weight and value to be attached to the whole of his testimony. Shartzer v. Atchison, T. & S. F. Ry. Co. (Mo. App.), 250 S. W. 950, 951[1], mentioning earlier cases cited by plaintiff. The instant evidence was of limited legal effect and it is proper in such instances to so inform the jury. Buckry-Ellis v. Missouri Pac. Rd. Co., 158 Mo. App. 499, 507, 508, 138 S. W. 912, 914[5], and Andrew v. Linebaugh, 260 Mo. 623, 654(VI), 169 S. W. 135, 143(VI), cited by plaintiff, sustain rather than question the instant instruction. Pulitzer v. Chapman, 337 Mo. 298, 317[3], 85 S. W. 2d 401, 410, 411[10], was not concerned with hearsay testimony, extrajudicial statements, but with judicial testimony given in a deposition in the same case.

After witness Chestnut had been impeached, defendants were privileged to offer competent hearsay evidence, if any they had, of statements consistent with his testimony for the purpose of rehabilitating the witness. State v. Emma, 324 Mo. 1216, 1224[I], 26 S. W. 2d 781, 784[2, 3]; State v. Richardson, 349 Mo. 1103, 1110[3], 163 S. W. 2d 956, 960[5]. In the Emma case an instruction advising that rehabilitating statements were not admitted as proof of the facts stated but solely for the purpose of corroborating the testimony of the witness was considered proper.

Generally, hearsay evidence is not admissible at all. Our system requires the production of witnesses to the fact. Witnesses relating hearsay avoid difficulties confronting witnesses to the fact. The scope of their evidence is the fact of the assertion, not the facts in the assertion. They avoid all particularity of the fact; they answer no questions, solve no difficulties, reconcile no contradictions, explain no obscurities, remove no ambiguities with respect to the facts. They rest upon the statement they were so informed and leave the facts with the informant. Neither impeaching testimony nor rehabilitating testimony should be taken as evidence of the hearsay facts so asserted. Justice ought not substitute such extrajudicial statements for a witness' testimony upon confrontation and supported by the sanction of an oath. Such hearsay evidence is concerned with and only with the fact of the assertion .and has nothing whatever to do with the

424

truth of the fact asserted. As we read the authorities and the observations therein the probative value of impeaching evidence ceases to function when it exhausts its force against the witness impeached. Its scope and its function is restricted to the credibility of said witness. It does not function legally as evidence having probative value against the other litigant. Our holding is that in the circumstances the instruction was not error as a matter of law. This is not saying the instruction covers all the law on the issue or that trial courts should give like instructions. Like instructions may be refused but that does not necessarily mean they misstate the law. Litigants should not be improperly circumscribed in their freedom of appropriate language and instructions may be differently worded in the furtherance of impartial justice to meet the exigencies of the varying facts of individual cases. On the other hand, a litigant may not stand idly by and take chances on a favorable verdict and, after being disappointed, successfully assert error of law in an instruction, which embraces all essential factors of his adversary's position on an issue without misdirecting the jury, because the instruction fails to embody a proposition to which he would have been entitled and which would have been accorded him had he submitted an instruction of his own on the issue. Defendants, absent a proper request, would be in no position to complain if the court had failed to instruct on the limited effect of the evidence. Ferril v. Kansas City L. Ins. Co., supra; City of St. Louis v. Worthington, supra, among others. So, too, with plaintiff in the instant circumstances. Crabtree v. Kurn, 351 Mo. 628, 173 S. W. 2d 851, 860[17], states: "If the railroad thought . . . that instruction two was too broad, a roving commission and confusing, it should have requested further instructions on such matters or incorporated them in the one given at its request." The fault of the instant instruction is not an error of law; that is, the fault is not misdirection but nondirection.

The order granting a new trial is set aside and the cause is remanded with directions to reinstate the verdict of the jury and enter judgment thereon. _Westhues_ and _Barrett, CC.,_ concur.

PER CURIAM:—The foregoing opinion by Bohling, C., is adopted as the opinion of the court. All the judges concur.